UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

IN THE MATTER OF THE COMPLAINT OF :
BB&T EQUIPMENT FINANCE CORPORATION :
VANE LINE BUNKERING, INC. :  Case 1:15-cv-02313-NLH-AMD
AS TITLED OWNER AND OWNER *Pro Hac Vice*:
OF THE BARGE DS-210 :
:
:
_____:

## ANSWER AND CLAIM OF BUCKEYE PENNSAUKEN TERMINAL LLC WITH RESPECT TO COMPLAINT OF BB&T EQUIPMENT FINANCE CORPORATION AND VANE LINE BUNKERING, INC.

Buckeye Pennsauken Terminal LLC ("Claimant" or "Buckeye"), by its undersigned attorneys, Blank Rome LLP, herewith answers the Complaint of BB&T Equipment Finance Corporation ("BB&T") and Vane Line Bunkering, Inc. ("Vane Line") and asserts its Claim against those Plaintiffs as follows:

### ANSWER

1. Paragraph 1 is a statement of jurisdiction to which no response need be made.

2. Admitted.

3. Buckeye is, despite due investigation, without sufficient knowledge or information to form a belief as to the truth of the matters asserted in paragraph 3 of the Complaint and the same are therefore generally denied.

4. Buckeye is, despite due investigation, without sufficient knowledge or information to form a belief as to the truth of matters asserted in paragraph 4 of the Complaint and the same are therefore generally denied.

5. Admitted.

138826.06512/100461390v.2

6. Despite due investigation, Buckeye is without sufficient knowledge or information to form a belief as to truth of the matters asserted in paragraph 6 of the Complaint and the same are therefore generally denied.

7. Admitted.

8. Admitted.

9. Admitted in part; denied in part. It is admitted that Buckeye has sustained and will sustain substantial damages, inclusive of lost net revenue, which are likely to amount to more than $13,700,000. Despite due investigation, Buckeye is without sufficient knowledge or information to form a belief as to the truth of the remaining allegations of paragraph 9 of the Complaint and the same are therefore generally denied.

10. Despite due investigation, Buckeye is without sufficient knowledge or information to form a belief as to the truth of the matters asserted in paragraph 10 of the Complaint and the same are therefore generally denied.

11. Despite due investigation, Buckeye is without sufficient knowledge or information to form a belief as to the truth of the matters asserted in paragraph 11 of the Complaint and the same are therefore generally denied.

12. Despite due investigation, Buckeye is without sufficient knowledge or information to form a belief as to the truth of the matters asserted in paragraph 12 of the Complaint and the same are therefore generally denied.

13. Buckeye specifically denies the allegations of paragraph 13 and sets forth the instances of fault, neglect and want of due care on the part of the Plaintiffs and their vessel in the Claim below.

14. Buckeye specifically denies the assertion of paragraph 14 of the Complaint and sets forth the instances of privity and knowledge on the part of Plaintiffs with respect to the destruction of Buckeye's property in the Claim below.

15. The assertions of paragraph 15 of the Complaint are conclusions of law to which neither admission nor denial need be made. Buckeye, however, specifically asserts, as set forth in the Claim below, that Plaintiffs are not entitled to exoneration from liability and do not have valid defenses to Buckeye's Claim.

16. The assertion of paragraph 16 of the Complaint is a conclusion of law to which neither admission nor denial need be made. Buckeye, however, denies that Plaintiffs are entitled to the benefit of the U.S. Shipowner's Limitation of Liability Act.

## AFFIRMATIVE DEFENSES

### FIRST DEFENSE

The allegations of the Complaint fails to state claims upon which relief may be granted, per Fed. R. Civ. P. 12(b) (6).

### SECOND DEFENSE

The limitation fund is inadequate and the Complaint should be dismissed because Plaintiffs have failed to deposit adequate security for the vessel identified in their Complaint and for the additional vessels within the flotilla which were under common operational control, supervision and enterprise. Pursuant to Rule F(1) of the Supplemental Rules for Certain Admiralty and Maritime Claims, the proper limitation fund must be deposited at the time of filing. Plaintiffs' deposit, at the time of filing, did not meet federal standards. As such, this limitation action must be dismissed.

## THIRD DEFENSE

The limitation fund is inadequate and the Complaint should be dismissed because Plaintiffs have failed to accurately identify and appraise the values of all of the vessels in the flotilla which should be included in the limitation funds.

## FOURTH DEFENSE

To the extent Plaintiffs' insurers attempt to avail themselves of the limitation/exoneration defense, Buckeye asserts that the Limitation of Liability Act is unavailable to insurers of vessel owners under the circumstances. In the alternative, no *prima facie* case has been made establishing they are entitled to avail themselves of the Limitation of Liability Act.

## FIFTH DEFENSE

The events culminating in the destruction of Buckeye's property were the result of the negligence, fault, or want of due care on the part of Plaintiffs and/or those for whom Plaintiffs are/were responsible, and/or the unseaworthiness of the CAPTAIN DANN and the DOUBLE SKIN 210, all of which was within the privity and knowledge of Plaintiffs, for which the Complaint, seeking exoneration from and/or limitation of liability, should be denied.

## SIXTH DEFENSE

Buckeye reserves the right to contest the appraisal value of the CAPTAIN DANN and the DOUBLE SKIN 210, their engines, apparel, appurtenances, pending freight, etc., and the adequacy of the security.

## SEVENTH DEFENSE

The limitation fund is inadequate and should be increased and/or this action should be dismissed because the limitation fund does not properly account for the value of the

appurtenances, attachments, freight then pending and/or cargo aboard the vessels, subject to the control of the vessel, and/or owned by the Plaintiffs.

## EIGHTH DEFENSE

Plaintiffs are not entitled to limit their liability under the Shipowner's Limitation of Liability Act because the acts or omissions giving rise to the events at issue were caused by the violation of a federal safety, operating or construction regulation, gross negligence and/or willful misconduct of the Plaintiffs, their agents, employees or persons acting pursuant to a contractual relationship with Plaintiffs, and/or within the Plaintiffs' privity and knowledge.

**WHEREFORE**, Buckeye Pennsauken Terminal LLC demands that the Complaint of BB&T Equipment Finance Corporation and Vane Line Bunkering, Inc., seeking exoneration from or limitation of liability, be dismissed with prejudice.

## CLAIM OF BUCKEYE PENNSAUKEN TERMINAL LLC

1. At all material times, Claimant Buckeye was and now is a company organized and existing under the laws of the State of New Jersey with an office and place of business at 123 Derousse Ave., Pennsauken, NJ.

2. At all material times, Claimant Buckeye was and is now the owner and operator of Buckeye Pennsauken Terminal (the "Terminal"), located at 123 Derousse Ave., Pennsauken, NJ on the premises of which are (or were) located facilities for the receipt, storage and transfer of petroleum products, including a certain waterfront dock structure known as Barge Dock #1 (the "Dock").

3. Plaintiffs BB&T Equipment Finance Corporation, the Vane Brothers Company and Vane Barge Line, Inc. (collectively "Vane"), are related companies organized and existing under the laws of the State of Maryland, with principal offices located at 2100 Frankfurst Street, Baltimore, MD. At all relevant times, Vane is and was in the business of providing transportation services for owners of oil products, and owns/operates a fleet of barges and towing vessels for that purpose upon, *inter alia*, the waters of the ports of Baltimore, Philadelphia, New Jersey and New York.

4. The Tank Barge ("T/B") DS210 (the "Barge") (Official No. 1238206) is, upon information and belief, a U.S.-flagged tank barge owned and operated by Vane. The Barge is now or will be, during the pendency of this action, found within this District and subject to arrest pursuant to process of this Court.

5. The motor tug ("M/T") CAPTAIN DANN (the "Tug") (Official No. 553443) is, upon information and belief, a U.S.-flagged vessel owned and operated by Dann Towing Company and Dann Ocean Towing, Inc. (collectively "Dann").

6. The Terminal is a waterfront-based facility which receives, stores and discharges substantial quantities of petroleum products on behalf of various customers located around the world. Prior to the incident described herein, the Barge Dock #1 was critically important to the operation of the Terminal in that it could accommodate barges of various sizes for the loading and discharge of petroleum products and because an incident on August 15, 2014 had resulted in the destruction of the Terminal's other principal dock.

7. On October 5, 2014, at 2050 hours, the Barge, loaded with a cargo of gasoline, affixed to and being pushed ahead by the Tug, allided heavily with the Dock during an attempted mooring, causing the destruction, collapse and/or sinking of the Dock's integral component structures including, but not limited to, the loading platform with its associated piping, the manifold, the hose tower, the upriver catwalks and the upriver mooring/breasting dolphins. The allision also resulted in the spilling of a quantity of petroleum product into the Delaware River from the damaged piping and manifold.

8. As a result of said allision, the Dock was rendered completely unusable and will remain so until repairs or reconstruction can be performed. The current estimate of the cost of repairs or reconstruction is $6,500,000, which is also the best estimate of the diminution in value of the Terminal caused by the allision.

9. As a consequence of the damage to the Dock, Claimant was caused to incur substantial emergency response and mitigation costs. Such costs and expenses included, *inter alia*, the cost of response to and remediation of the pollution caused by the allision, emergency repairs and demolition work to stabilize and secure the Dock and associated piping, and retrofitting and improvement work to certain other docks at the Terminal in order that those docks could be used to minimize the business losses and customer inconvenience resulting from the destruction of

Barge Dock #1. Those response and mitigation costs, past and future, are currently estimated to be $2,476,504.

10. In spite of Claimant's strenuous attempts to mitigate its business losses, Claimant has lost and for months to come will continue to lose substantial revenue as a direct result of the destruction of the Dock by the Plaintiffs and the two Vessels. Two of Claimant's customers have either cancelled or suspended their storage contracts or tank lease agreements as a direct result of the inability to deliver petroleum products to the Terminal in large barges. One other customer has incurred and continues to incur increased expenses as a result of the need to use smaller barges and has had to be reimbursed a portion of those expenses by Claimant in order to prevent the customer from cancelling its storage contract. Claimant estimates its lost net profits through November 30, 2015, the anticipated date by which Dock #1 will be repaired or replaced, to be $4,729,957.

11. The allision and the consequences thereof were proximately caused by, and due in whole or in part to, the negligence, navigational error and fault of Vane, their agents, servants and employees, acting in the course and scope of their agency or employment and with the privity and knowledge of Vane, and the negligence, navigational error, fault and unseaworthiness of the Tug and Barge, committed while such vessels were operating upon the navigable waters of the United States.

## FIRST CAUSE OF ACTION – NEGLIGENCE

12. The foregoing allegations are incorporated by reference as if fully set forth.

13. The aforesaid allision and resulting damages were not caused in any way by any action or inaction on the part of Claimant. At the time of the incident, the Dock was stationary, appropriately lighted, and sufficiently strong, staunch and fit to withstand the normal rigors of maritime commerce and foreseeable contact by loaded and properly navigated vessels.

14. The allision and resulting damages were due in whole or in part to the fault and negligent acts of Vane in the following respects, among others, each one of which acts of negligence or negligent omissions, alone or in conjunction with others, was a proximate cause of the allision and the damages suffered by Claimant:

   a. The Tug chartered by Vane was not manned with a sufficiently competent, experienced, skillful or able crew;

   b. Those in charge of the Tug, including but not limited to the captain and crew, were inattentive to their duties;

   c. The Tug was pushing the Barge at an excessive rate of speed under the circumstances and conditions;

   d. The Tug was not sufficiently powerful to handle the loaded Barge under the prevailing current and weather conditions;

   e. Vane failed to select a proper towing vessel or to provide the Tug with an assist tug for the attempted mooring maneuver;

   f. The Tug's captain and crew failed to use all available means appropriate in the prevailing circumstances to determine and avoid the risk of allision;

   g. The Tug's captain and crew negligently and incompetently navigated and maneuvered the Barge;

   h. The Tug's captain and/or crew members on duty reacted too late to avoid the allision;

i. The Tug's captain and/or crew members on duty suffered from fatigue and high levels of stress;

j. Vane failed to properly inspect, investigate or vet the capabilities and systems of Dann and its vessel, i.e., the Tug, before chartering the Tug or engaging Dann to tow the Barge to the Terminal;

k. The Tug's captain and/or crew members were not properly trained;

l. The Tug's captain and/or crew members were not properly supervised;

m. Company policies and procedures of Vane were below standard, were not imposed upon the Tug and/or were not followed by the Tug captain and/or crew members;

n. Vane failed to properly formulate safety policies;

o. The Tug lacked proper manuals and/or instructions;

p. The Tug's crew were not properly trained in the operation and capacities of the Tug and its navigational equipment;

q. Due care was not properly exercised in selecting the captain and/or crew of the Tug; and

r. Vane failed to develop, create or impose upon the Tug proper safety policies and procedures such as Job Safety Analysis system designed to prevent allisions such as the one that occurred in this case.

138826.06512/100461390v.2

## SECOND CAUSE OF ACTION – THE VESSELS WERE UNSEAWORTHY

15.  The foregoing allegations are incorporated by reference as if fully set forth herein.

16.  In addition to those allegations, or in the alternative, the Barge and Tug which were owned, operated, maintained, selected, chartered and/or controlled by Vane, were unseaworthy and as a result, they struck and damaged the Dock. The Vessels were unseaworthy in the following respects, among others:

   a.  The Tug was not manned with a sufficiently competent, experienced, skillful or able crew;

   b.  The Tug was not sufficiently powerful to handle the loaded Barge under the prevailing current and weather conditions;

   c.  The Tug's captain and/or crew members were not properly trained;

   d.  The Tug's captain and/or crew members were not properly supervised;

   e.  Company policies and procedures of Vane and Dann, were below standard, were not imposed upon and/or were not followed by the captain and/or crew members;

   f.  Vane failed to properly formulate safety policies applicable to the towing of its vessel;

   g.  The Tug lacked proper manuals and/or instructions;

   h.  Due care was not exercised in selecting the captain and/or crew of the Tug; and

    i. Proper safety policies and procedures designed to prevent allisions such as the one that occurred in this case were not established or followed.

17. Vane was aware, or had privity and knowledge of the unseaworthy condition of the Vessels and failed to exercise due diligence to correct such conditions and also was vicariously responsible for or had privity and knowledge of such other faults and negligence as specified above as will be proved at the trial of this case.

## DAMAGES

18. As a result of the foregoing acts, omissions and negligence, Claimant has and will suffer damages including the costs and expenses to make temporary and permanent repairs to the Dock; loss of use; loss of profits; response costs; mitigation expenses; extraordinary operating costs; costs of surveyors; costs of engineers; cost of insurance; cost of any recertification; pre-judgment and post-judgment interest; and attorneys' fees.  Claimant seeks these damages and all other general and equitable relief this Court deems appropriate.  Claimant reserves the right to amend and supplement this paragraph of its Complaint to allege other and further damage as may become known.

**WHEREFORE**, Claimant prays:

A. That judgment be entered for Claimant and against Vane, jointly and severally, in the amount of $13,706,461 subject to amendment, together with prejudgment interest at a proven rate, and together with Claimant's costs and disbursements incurred herein.

B. That the Vessel DS 210, its tackle, engines, apparel, furniture and equipment and all other appurtenances and additions, improvements, and replacements belonging thereto, be condemned and sold to pay the judgment entered herein, including interest then accrued and all costs and disbursements due Claimant herein,

including costs of *custodia legis*; and

C.  That Claimant may have such other and further relief as the Court deems just and proper in the premises.

DATED this 23rd day of June, 2015.

BLANK ROME LLP

*/s/ Jeffrey S. Moller*

Jeffrey S. Moller
moller@blankrome.com
James J. Quinlan
quinlan@blankrome.com
301 Carnegie Center. 3rd Floor
Princeton, NJ  08540
215-569-5792
215-832-5792
*Attorneys for Claimant*
*Buckeye Pennsauken Terminal LLC*

138826.06512/100461390v.2

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing Answer and Claim of Buckeye Pennsauken Terminal LLC with Respect to Complaint of BB&T Equipment Finance Corporation and Vane Line Bunkering, Inc. was served via First Class Mail and Email this 23rd day of June, 2015, upon:

> James W. Johnson, Esquire
> Ricci Tyrell Johnson & Grey
> 1515 Market Street, Suite 700
> Philadelphia, PA 19102

> Guerric S.D.I. Russell
> Nicoletti, Hornig & Sweeney
> 505 Main Street, Suite 218
> Hackensack, NJ 07601

Jeffrey S. Moller